**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

United States of America,

               Plaintiff,

                                  Crim. No. 04-221 (RHK/RLE)
                                  Civ. No. 07-2513 (RHK)
                                  **MEMORANDUM OPINION AND
                                  ORDER**

v.

David Lee Anderson,

               Defendant.

Tricia A. Tingle, Assistant United States Attorney, Minneapolis, Minnesota, for Plaintiff.

David Lee Anderson, Defendant *pro se*, Marion, Illinois.

     This matter is before the Court on Defendant David Lee Anderson's Motion pursuant to 28 U.S.C. § 2255. For the reasons set forth below, the Court will deny the Motion.

**BACKGROUND**

     Anderson was indicted in 2004 for being a felon in possession of a firearm (a shotgun). The facts giving rise to Anderson's indictment were laid bare at a July 14, 2004 hearing before Chief Magistrate Judge Raymond L. Erickson and Anderson's September 9, 2004 change-of-plea hearing before the undersigned, and supplemented in his Motion papers, as follows:

     In January 2004, Anderson was living with his then-girlfriend, Jennifer Dargon,

and Dargon's teenage daughter, Ashley. On January 23, 2004, Ashley spoke to a school counselor and related that she was concerned for her (and Jennifer's) safety because of repeated arguments between Jennifer and Anderson; the counselor called the police. Police Officer Randy Lee later interviewed Ashley at school, at which time she informed him that Anderson had firearms in Dargon's home. When Ashley got home later that evening, she told Jennifer about her conversation with Officer Lee, and Jennifer, in turn, relayed that information to Anderson. Because he was concerned that the police might come to the residence as a result of Ashley's statements, Anderson moved his firearms (including the shotgun at issue) that evening to the house of a friend, John Amundsen.

Later that night, Officer Lee and a social worker traveled to the Dargon residence to speak to Jennifer. They left when no one answered repeated knocks on the door. Officer Lee and another officer returned the following morning. This time, Jennifer answered the door, and the officers informed her that because of their concern for Ashley's safety, either Anderson had to leave or they were going to take Ashley into protective custody.[1] Anderson then agreed to leave the residence. As he was departing, Officer Lee asked Ashley whether any guns were in the house, and Ashley informed him that Anderson had moved his firearms the previous evening to Amundsen's home.

Because of the cold temperature that day and because Anderson did not have his own vehicle, Officer Lee offered Anderson a ride, which he accepted; he asked to be

---

[1] According to his pre-sentence report, Anderson previously was convicted of two counts of second degree sexual conduct with a 12-year-old girl.

taken to Amundsen's home.  Upon arriving there, while Anderson remained unable to exit from the back of the police car, Officer Lee went to the house and asked Amundsen for the firearms Anderson had brought over the night before.  Amundsen then retrieved the shotgun from his garage and gave it to Officer Lee.  Anderson was then placed under arrest.  He was later indicted for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g).  Because he had several prior felony convictions, the indictment also charged that Anderson was subject to a fifteen year mandatory-minimum sentence as an armed career criminal under 18 U.S.C. § 924(e).[2]

Anderson, through Court-appointed counsel, filed several pre-trial Motions, including a Motion to suppress evidence obtained through unlawful searches or seizures.  On July 14, 2004, Judge Erickson held a hearing on Anderson's Motions.  At that hearing, defense counsel made clear that he was not moving to suppress the shotgun.  Rather, his Motion concerned only a statement made by Anderson in the back of Officer Lee's squad car prior to his arrest, which the parties agreed was moot.  (See 7/14/04 Hearing Tr. at 21, 25.)

Following the Motions hearing, and pursuant to a Plea Agreement with the Government, Anderson pleaded guilty to Count 1 of the Superseding Indictment.  During his plea colloquy, Anderson admitted that he had possessed the shotgun at issue on

---

[2] The Government later superseded the indictment to allege two separate instances of unlawful possession of a firearm, but the second of the two counts is not at issue in the instant Motion.

January 23 and 24, 2004; that he had transported the firearm from Dargon's residence to Amundsen's residence on the night of January 23, 2004, because he thought the police might be coming to Dargon's residence; that the shotgun had previously moved in interstate commerce; and, despite having left the shotgun at Amundsen's home, that he had not intended to relinquish ownership thereof. (9/9/04 Tr. at 19-20.) However, Anderson disputed that he was an armed career criminal subject to the 15-year mandatory minimum, and the parties agreed to litigate that issue to the Court. Anderson's Plea Agreement reserved to him the right to appeal his sentence in the event the Court concluded that the 15-year mandatory minimum were applicable. However, he expressly "waive[d] his right to appeal any issue relating to the suppression of evidence or his guilt to the offense." (Plea Agreement ¶ 9.)

After the Court accepted Anderson's guilty plea, the parties briefed the issue of the applicability of the 15-year mandatory minimum. Anderson argued *inter alia* that several of his prior convictions were not "violent felonies" under Section 924(e) and, accordingly, that the mandatory minimum did not apply. The Court disagreed and sentenced him to 15 years' imprisonment. Anderson then appealed his sentence, arguing once again that his prior convictions were not "violent felonies" under Section 924(e). The Eighth Circuit rejected that argument and affirmed his sentence. United States v. Anderson, 438 F.3d 823 (8th Cir. 2006).

Anderson now seeks habeas-corpus relief under 28 U.S.C. § 2255. Anderson asserts four grounds in support of his Motion: (1) he was denied due process when the

Court improperly sentenced him as an armed career offender under Section 924(e); (2) Congress lacked power under the Commerce Clause to criminalize possession of the shotgun at issue here because it had last moved in interstate commerce over 70 years ago, and his counsel was ineffective for failing to raise this issue; (3) his counsel was ineffective for failing to move to suppress the shotgun due to its "illegal" seizure; and (4) the Government failed to disclose evidence favorable to him.

## DISCUSSION

### I. Several of Anderson's alleged grounds for relief are either barred or procedurally defaulted

It is well settled that a collateral attack cannot be used to relitigate issues that were raised on direct appeal. See, e.g., United States v. McGee, 201 F.3d 1022, 1023 (8th Cir. 2000); Thompson v. United States, 7 F.3d 1377, 1379 (8th Cir. 1993). As such, Ground 1 of Anderson's Motion is barred, because he argued unsuccessfully on appeal that he was not a career offender under Section 924(e).

Ground 4 of Anderson's Motion (failure to disclose evidence) is also barred, but for a different reason: his guilty plea. "When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Tollett v. Henderson, 411 U.S. 258, 267 (1973); accord Iron Wing v. United States, 34 F.3d 662, 664 n.2 (8th Cir.

1994).[3]

## II.   The Commerce Clause argument fails

In Ground 2, Anderson asserts that Congress lacked constitutional authority to criminalize possession of firearms that traveled across state lines long ago. In the absence of any significant, current nexus between a firearm and interstate commerce, Anderson argues that Congress could not, consistent with the Constitution, make possession of such a firearm illegal. (See Def. Mem. at 25-34.) This is a common refrain from defendants convicted as felons in possession, and one rejected by both the Supreme Court and the Eighth Circuit. See, e.g., Scarborough v. United States, 431 U.S. 563, 575-77 (1977); United States v. Leathers, 354 F.3d 955, 959 (8th Cir. 2004); United States v. Sianis, 275 F.3d 731, 734 (8th Cir. 2002); United States v. Carter, 270 F.3d 731, 734-35 (8th Cir. 2001).

Recognizing that the weight of the authority is against him, Anderson asserts that the Supreme Court wrongly decided Scarborough (see Def. Mem. at 30-31), the progenitor of all the Eighth Circuit cases cited above. Yet, this Court cannot indulge Anderson's implicit invitation to overrule Scarborough, which is the supreme law of the

---

[3] The Government asserts that Anderson's guilty plea also bars Ground 2, at least insofar as it concerns the Commerce Clause (and not ineffective assistance of counsel). (Gov't Response at 3.) The Government is incorrect. A collateral attack to a "jurisdictional" issue – such as an assertion that "the charge is one which . . . may not [be] constitutionally prosecute[d]" – is not barred by a guilty plea. E.g., United States v. Morgan, 230 F.3d 1067, 1071 (8th Cir. 2000). This is precisely what Anderson argues here, *viz.*, that Congress lacked authority under the Constitution to criminalize possession of a firearm that last traveled in interstate commerce more than 70 years ago.

land and binding on this Court. See, e.g., Thurston Motor Lines, Inc. v. Jordan K. Rand, Ltd., 460 U.S. 533, 535 (1983) ("[O]nly this Court may overrule one of its precedents. Until that occurs, [such precedent] is the law."); Hutto v. Davis, 454 U.S. 370, 375 (1982) ("a precedent of [the Supreme] Court must be followed by the lower federal courts no matter how misguided the judges of those courts may think it to be").[4]

### III. The ineffective-assistance claims fail

The remaining two grounds in Anderson's Motion (part of Ground 2 and Ground 4) assert ineffective assistance of counsel. Specifically, Anderson argues that his counsel was ineffective for failing to raise the Commerce Clause issue discussed above (Ground 2) and for failing to move to suppress the shotgun due to its allegedly unlawful seizure (Ground 4). The Court rejects both claims.[5]

In order to prove that his counsel was constitutionally ineffective, Anderson must

---

[4] In any event, there exists no factual basis for Anderson's contention that the shotgun last moved in interstate commerce 70 years ago. He points to a letter he received from the J. Stevens Arms Company (the manufacturer of the shotgun), which he claims supports his assertion that the shotgun had not moved in interstate commerce for "over 70 years prior to [him] coming into possession of" it. (Def. Mem. at 23.) That letter, however, indicates that J. Stevens Arms Model 94 shotguns were made until either 1960 or 1987, depending on precisely where they were manufactured. (Id. Ex. 1.) Moreover, it is entirely possible that the shotgun moved in interstate commerce *after* its manufacture – for example, it may have been sold from one firearms dealer to another in a different state. Anderson has simply failed to point to any evidence supporting his claim that the shotgun last crossed state lines in the 1930s.

[5] The Court notes that it asked Anderson at his plea colloquy if he was satisfied with his counsel's performance, and he answered in the affirmative. (See 9/9/04 Plea Tr. at 6 ("Q: Are you satisfied with [your lawyer's] representation? A: Yes."); see also 3/21/05 Sentencing Tr. at 25 ("I am the kind of person that I am not just going to rely on Mr. Kolstad [Anderson's attorney], even though I believe he has done a wonderful job for me and I am happy with what he's done.").)

show that counsel's performance "fell below an objective standard of reasonableness . . . [and] that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 687-88, 694 (1984). In the context of a guilty plea, this means that but for counsel's errors, the defendant "would not have pleaded guilty and would have insisted on going to trial." Iron Wing, 34 F.3d at 664 (quoting Hill v. Lockhart, 474 U.S. 52, 57-59 (1985)). Applying this standard here, it is clear that both of Anderson's ineffective-assistance claims fail.

Commerce Clause. The Court rejects Anderson's first ineffective-assistance claim (Ground 2) because counsel did not act unreasonably in failing to assert the meritless Commerce Clause argument. Simply put, "counsel's failure to advance a meritless argument cannot constitute ineffective assistance." Rodriguez v. United States, 17 F.3d 225, 226 (8th Cir. 1994) (*per curiam*). Moreover, because the argument would not have succeeded, there is no reasonable basis to conclude, had counsel made the argument, that Anderson would not have pleaded guilty and would have instead gone to trial. Iron Wing, 34 F.3d at 664.

Suppression. Anderson's second ineffective-assistance claim (Ground 4) fails for the same reason: a motion to suppress the shotgun would not have been successful, and hence counsel cannot have acted unreasonably in failing to move to suppress.

There is no dispute that Anderson transported the shotgun to Amundsen's house and hid it in his garage. When police officers traveled to the home, they asked Amundsen

for the shotgun, which he then retrieved and turned over to the police. Anderson argues that he was living at the Amundsen residence at the time and, accordingly, that he had the right to object to Amundsen's search,[6] but he nowhere argues that the garage was not under Amundsen's common control. See United States v. Hilliard, 490 F.3d 635, 639 (8th Cir. 2007) (noting that "[v]alid consent to search may be given by a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected"). Nor does he argue that he actually objected to the search when it occurred. See id. at 639-40 & n.5 (no constitutional violation where occupant with common authority over searched area, who was present at time of search, failed to object). More importantly, it was reasonable for the officers to assume that Amundsen had authority over *his own garage*. Therefore, even if Amundsen actually lacked such authority, no Fourth Amendment violation occurred and the Court would not have suppressed the shotgun if asked. See id. at 639 ("Even if the third party lacked the requisite common authority, the Fourth Amendment is not violated if the police reasonably believed the consent was valid.").

Anderson argues that a motion to suppress the shotgun would have been granted, relying primarily on United States v. James, 353 F.3d 606 (8th Cir. 2003); James is distinguishable. There, the defendant had left several computer disks at the home of a

---

[6] For Fourth Amendment purposes, it is irrelevant that the search was conducted by Amundsen and not the officers. A search may violate the Fourth Amendment even when undertaken by private actors, if they are acting as agents of the government when conducting it. See, e.g., United States v. Parker, 32 F.3d 395, 398-99 (8th Cir. 1994).

friend.  The disks were contained in a sealed envelope that was addressed to the defendant, who was in custody on unrelated charges at the time.  The defendant tried to send a letter to the friend from prison telling him to destroy the disks.  The letter was intercepted and given to law-enforcement officers, who then interviewed the defendant's friend.  During that interview, the friend volunteered the envelope to the officers, and they opened it.  Inside they found 10 compact disks bound together with tape.  The top disk had a note attached that read "virus, danger, confidential classified, virus research project contaminated CD – danger personal private."  The officers took the disks and later tried, unsuccessfully, to access them.  They then obtained the assistance of another officer with extensive computer experience, who brought in a more sophisticated computer and finally gained access to the files on the disks, discovering that they contained child pornography.  The defendant was then indicted.  Id. at 610-11.

Before trial, the defendant moved to suppress the disks, arguing that the officers had violated the Fourth Amendment when they seized them without a warrant.  The district court denied the motion, but on appeal the Eighth Circuit reversed.  The appellate court reasoned that the totality of the circumstances – including the fact that the disks were contained in a sealed envelope marked "personal" and "private" and could only be accessed using special computer equipment, and that the defendant had instructed his friend to destroy the disks – indicated that no one, including the defendant's friend, exercised common authority over the disks.  Id. at 613-15.  By contrast here, Anderson has pointed to no facts indicating that he intended to exclude anyone from the garage,

10

where the shotgun was stored.

Furthermore, Anderson has failed to show that he would have proceeded to trial even if counsel had moved to suppress and that motion had been granted.  There existed ample other evidence for the Government to prove Anderson's unlawful possession of the shotgun, including (1) testimony from Amundsen and Ashley, both of whom observed Anderson with the shotgun in his possession, (2) testimony from Yelena Bejelland, from whom Anderson purchased the shotgun, and (3) recordings of telephone calls Anderson made while incarcerated pending trial, indicating his consciousness of guilt.  In light of this evidence, the Court concludes that Anderson would not have proceeded to trial even if the shotgun had been suppressed.

Iron Wing is instructive in this regard.  There, the defendant had pleaded guilty to committing a crime of violence with a dangerous weapon.  He later moved for relief under 28 U.S.C. § 2255, arguing that police had unlawfully seized a rifle from his home and that his trial counsel was ineffective for failing to move to suppress the rifle.  The district court denied the motion, and the Eighth Circuit affirmed.  The appellate court noted that even if the defendant had prevailed on a suppression motion, it was unlikely that he would have proceeded to trial because there was a bevy of other evidence of his guilt, including testimony of witnesses who saw the defendant with the rifle.  Notably, the court reached this conclusion notwithstanding the defendant's assertion that he would have gone to trial had the rifle been suppressed, concluding that "the plea agreement was a prudent course for Iron Wing with or without the rifle."  34 F.3d at 665.  The Court

11

believes that the same is true here.

**IV.    No hearing is necessary**

Anderson has not requested a hearing in connection with his Motion, and the Court concludes that it need not hold one. "A defendant is entitled to a hearing on a § 2255 motion 'unless the motion, files, and record conclusively show' that the defendant is not entitled to relief." United States v. Regenos, 405 F.3d 691, 694 (8th Cir. 2005) (quoting Koskela v. United States, 235 F.3d 1148, 1149 (8th Cir. 2001)). Here, the record conclusively demonstrates that Anderson is not entitled to relief.

**V.    No certificate of appealability will be granted**

Finally, the Court anticipates that Anderson will seek Eighth Circuit review of this Order. A federal prisoner may not appeal a final order in a proceeding under 28 U.S.C. § 2255 without first securing a certificate of appealability. 28 U.S.C. § 2253(c)(1)(B). A district court cannot grant a certificate of appealability unless the prisoner "has made a *substantial showing* of the denial of a constitutional right." Id. § 2253(c)(2) (emphasis added); accord Williams v. United States, 452 F.3d 1009, 1014 (8th Cir. 2006). A certificate of appealability will not be granted simply because an appeal is pursued in good faith and raises a non-frivolous issue. See Kramer v. Kemna, 21 F.3d 305, 307 (8th Cir. 1994) ("Good faith and lack of frivolousness, without more, do not serve as sufficient bases for issuance of a certificate under 28 U.S.C. § 2253."). Rather, the prisoner must satisfy a higher standard; he must show that the issues to be raised on appeal are "debatable among reasonable jurists," that different courts "could resolve the issues

differently," or that the issues otherwise "deserve further proceedings." Cox v. Norris, 133 F.3d 565, 569 (8th Cir. 1997); accord Flieger v. Delo, 16 F.3d 878, 882-83 (8th Cir. 1994).

The Court concludes that a certificate of appealability would not be appropriate here. Anderson's claims have been fully addressed herein and lack merit. The Court does not believe that his claims are "debatable among reasonable jurists." Cox, 133 F.3d at 569. He has not shown sufficient reason to believe that any other court – including the Eighth Circuit – would decide this case any differently than it was decided here. He has not identified, and the Court cannot independently discern, anything novel, noteworthy or worrisome about his case warranting appellate review. Thus, the Court concludes that Anderson is not entitled to a certificate of appealability in this matter.

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that (1) Anderson's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (Doc. No. 75 in Crim. No. 04-221; Doc. No. 1 in Civ. No. 07-2513) is **DENIED**, and (2) Anderson is not entitled to a certificate of appealability should he attempt to appeal this Order to the Eighth Circuit.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.


Dated: November 6, 2008                                s/Richard H. Kyle
                                                       RICHARD H. KYLE
                                                       United States District Judge